# CHARLESTON.

## McNeill *et al. v.* McNeill *et al.*

Submitted September 3, 1897—Decided November 13, 1897.

1. DEED—*Death of Vendor—Revocation.*
   A deed duly executed and delivered, which conveys the legal title to real estate to a vendee, although a mere power to sell, is not revoked by the death of the vendor. (p. 768.)

2. EQUITY JURISDICTION—*Payments—Reversion.*
   A court of equity will not prematurely determine to whom a sum payable in the future, the payment of which is optional with the payor, will be coming, or, in default of the payment thereof, to whom the title to real estate forfeited thereby will revert at a remote future time. (p. 769.)

Appeal from Circuit Court, Hardy County.

Bill by George D. McNeill and others against E. W. McNeill and others. Decree for defendants. Plaintiffs appeal.

*Affirmed.*

J. N. MULLAN and H. B. GILKESON, for appellants.

H. S. CARR and BENJ. DAILEY, for appellees.

DENT, JUDGE :

George D. McNeill *et al.* appeal from a decree of the Circuit Court of Hardy County, entered in a cause therein pending, wherein they were plaintiffs, and E. W. McNeill and others were defendants. The grounds of error assigned are as follows: (1) That the court refused to cancel, as null and void, a certain deed executed by B. S. McNeill,

deceased, to E. W. McNeill, on the 10th day of July, 1889, for the reason that the same was a mere power of attorney. (2) In not decreeing who was entitled to the purchase money secured in such deed, provided the same should be paid within the time limited; and, if not, to whom the land would revert. The deed is as follows:

"This deed, made this 10th day of July, 1889, between B. S. McNeill and Margaret McNeill, his wife, parties of the first part, and E. W. McNeill, party of the second part, all of the county of Hardy and State of West Virginia, witnesseth, that the said parties of the first part, for and in consideration of the sum of fifteen dollars per acre, to wit, $14,250, to be paid unto the said parties of the first part, their heirs or assigns, or personal representatives, within ten years from this date, by the said party of the second part, or his assigns, the said parties of the first part hereby grant, sell, and convey unto the said party of the second part, and his assigns, with general warranty, the one undivided half of the following tract or parcel of land, lying and being in the county of Tucker, in the State of West Virginia, described as follows, to wit: One undivided half of a tract or parcel of land containing nineteen hundred acres, more or less, lying on the Dry Fork of Cheat river, in said county and state; it being the same tract of land surveyed for Francis and William Deakins on the 24th day of October, 1792, and conveyed to them by the commonwealth of Virginia by patent bearing date on the 10th day of June, 1794, and the same tract conveyed by Francis W. Deakins and wife, deed dated September 16th, 1839, and W. F. Deakins and wife, by deed dated August 15th, 1839, by John Hoy and wife, by deed bearing date the 5th day of October, 1839, and by Tobitha M. Cassin, John Heath, George MacLeod and wife, Richard Surpell and wife, and others, by deed dated the 30th day of June, 1837, to Daniel R. McNeill, William C. McNeill, and said B. S. McNeill, party of the first part, all of which aforesaid deeds are of record in Randolph County, in the State of West Virginia; the said county of Tucker at the time of the execution of said deeds being a portion of Randolph county. It is further provided and expressly agreed by the parties to this deed that unless the said E. W. McNeill, party of the second part, or his

assigns, shall, within ten years from the date of this deed, pay to the said party of the first part, his personal representatives or heirs, the sum of fifteen dollars per acre, to wit, the sum of $14,250, then and in that event the lands hereby conveyed shall revert to and vest in the said parties of the first part, or their heirs, and this deed shall be null and void, and the said parties of the first part, their heirs or personal representatives, shall have no right of action under this deed against the said party of the second part, or his assigns. Witness our hands and seals. B. S. McNeill. [Seal.] Margaret McNeill. [Seal.]

"State of West Virginia, Hardy County, to wit: I, H. G. Maslin, a justice for the county aforesaid, do certify that B. S. McNeill, whose name is signed to the above writing bearing date the 10th day of July, 1889, has this day acknowledged the same before me in my said county. Given under my hand this 10th day of July, 1889. H. G. Maslin, Justice.

"State of West Virginia, Hardy County, to wit: I, H. G. Maslin, a justice for the county aforesaid, do certify that Margaret McNeill, the wife of B. S. McNeill, whose names are signed to the above writing, bearing date the 10th day of July, 1889, personally appeared before me in the county aforesaid, and being examined by me privily and apart from her husband, and having the said writing fully explained to her, she, the said Margaret McNeill, acknowledged the said writing to be her act, and declared that she had willingly executed the same, and does not wish to retract it. Given under my hand this 10th day of July, 1889. H. G. Maslin, Justice.

"State of West Virginia, Hardy County, to wit: Be it remembered that on the 10th day of May, 1890, this deed, with the certificates thereon indorsed, was filed in the clerk's office of the county court of Hardy county, and admitted to record. Teste: Robt. A. Wilson, Clerk County Ct. H. C."

The effort of plaintiffs, opposed by defendants, was to show, by a prior written contract, and by parol evidence, that this deed was a mere power of attorney to sell, and not an absolute sale, and that by reason thereof it was revoked by operation of law on the death of B. S. McNeill, the grantor. The defendant insisted that it was an abso-

lute sale, optional in ten years, on condition of the payment of the purchase money within the time limited. Unfortunately for the plaintiffs, viewing the deed, from their standpoint, as a mere power to sell, yet it was coupled with such interest as rendered it irrevocable on the death of the grantor; for the legal title was fully vested in the grantee, and in making a sale he acted for himself, and not as agent or attorney for the grantor, to wit, in his own name. The law on this point is laid down by Chief Justice Marshall in the case of *Hunt* v. *Rousmanier's Adm'rs*, 8 Wheat. 204, where he says: "The interest or title in the thing being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name. The act of the substitute, therefore, which in such a case is the act of the principal, to be legally effectual, must be in his name; must be such an act as the principal himself would be capable of performing, and which would be valid if performed by him. Such a power necessarily ceases with the life of the person making it. But if the interest or estate passes with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name. He is no longer a substitute, acting in the place and name of another, but is a principal, acting in his own name, in pursuance of powers which limit his estate. The legal reason which limits a power to the life of the person giving it exists no longer, and the rule ceases with the reason on which it is founded. The intention of the instrument may be effected without violating any legal principle." Also: "We know that a power to A., to sell for the benefit of B., ingrafted on an estate conveyed to A., may be exercised at any time, and is not affected by the death of the person who created it. It is, then, a power coupled with interest, although the person to whom it is given has no interest in its exercise. His power is coupled with an interest in the thing, which enables him to execute it in his own name, and is therefore not dependent on the life of the person who created it." The instrument under consideration, by its terms, shows that this was the plain intention of the grantor, as he provides for payment of the purchase money in case of his death. So, viewing the controversy in the strongest possible light for

plaintiffs, the circuit court committed no error against them. Nor was it wrong for the court to refuse to determine to whom the purchase money should be paid, if paid in time, and, if not, to whom the title should revert. Not all the heirs of B. S. McNeill who would be interested in such determination are before the court, and hence they would not be bound thereby. Not only this, but the question is premature, for death may make quite a change in the parties before the time limit has expired. It is true, if the vendee defendant was ready to pay the purchase money, for his own protection he might ask the court to construe the will and deed, and determine to whom he should pay, or relieve him by assuming charge of the fund, but he is not so asking. The decree is affirmed.

*Affirmed.*